# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WILLIAM STONE PREMIER PROPERTIES, LLC,**

      Plaintiff,

v.                                           Case No: 6:16-cv-2157-Orl-31GJK

**ONI BABATUNDE E.,**

      Defendant.

## ORDER

This matter comes before the Court without a hearing on the Motion for Partial Summary Judgment (Doc. 29) filed by the Plaintiff, William Stone Premier Properties, LLC (henceforth, "Stone"), the response in opposition (Doc. 34) filed by the Defendant, Oni Babatunde E. ("Oni"), and the reply (Doc. 38) filed by Stone.

### I. Background

In November 2014, Oni and Stone entered into a contract (henceforth, the "Management Contract") in which Oni agreed to pay Stone $25,000 per month to supervise construction on property located in Reunion, Florida. Though not obligated to do so under the express terms of the Management Contract, Stone made payments on Oni's behalf to subcontractors, for materials, and for other building costs. The project was completed in late 2015. Although Oni made numerous payments to Stone during the course of construction, Stone contends that he still owes the company $346,526.51.

Stone filed the instant suit on December 16, 2016. In it, the company asserts three state-law claims: open account (Count I); breach of contract (Count II); and unjust enrichment (Count

III). By way of the instant motion, Stone seeks summary judgment as to liability on the open account claim, only.

## II. Legal Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III.    Analysis**

Under Florida law, an open account is "an unsettled debt arising from items of work and labor, with the expectation of further transactions subject to future settlements and adjustment." *Farley v. Chase Bank, U.S.A., N.A.*, 37 So. 3d 936, 937 (Fla. 4th DCA 2010) (citing *S. Motor Co. of Dade County v. Accountable Constr. Co.*, 707 So. 2d 909, 912 (Fla. 3d DCA 1998)).[1] To state a valid claim on an open account, the claimant must attach an "itemized" copy of the account. *Id.* (citing *H & H Design Builders, Inc. v. Travelers' Indem. Co.*, 639 So. 2d 697, 700 (Fla. 5th DCA 1994)). In its Complaint (Doc. 1), Stone contends that it presented an itemized final account statement to Oni in March 2016. (Doc. 1 at 5-6). A copy of that document is attached to the Complaint as Exhibit H.

Oni does not dispute that Stone advanced at least some payments. However, Oni raises two arguments that Stone is not entitled to summary judgment. First, he contends that a genuine issue of material fact exists as to whether the claim is barred because the payments were encompassed by the Management Contract or some modification to it. (Doc. 34 at 5, 11).

---

[1] An action for open account stands in contrast to Florida's cause of action for account stated, which is defined as "an agreement between two persons who have had previous transactions, fixing the amount due in respect of such transactions, and promising payment." *Id.* (citing *Martyn v. Arnold*, 18 So. 791, 793 (Fla. 1895)).

It is well settled under Florida law that an open account does not include sums due under an express contract:

> An obligation does not become an "open account" simply because the amount due under a contract requires calculation. An obligee under a contract cannot avoid the requirement of pleading and proving a cause of action based on a contract by placing its demand on a "statement of account" and mailing it to the obligor.

*H & H Design Builders, Inc.*, 639 So. 2d at 700.

According to Oni, Stone "appears to have deemed it necessary" to advance certain construction costs related to materialmen and subcontractors, suggesting that Stone did so because of its obligations under the Management Contract. (Doc. 34 at 7). In support of this argument, Oni points to two email chains involving the parties.[2] In the first chain, after a potential supplier informed Stone that it could not accept payment by wire transfer from Oni, Stone told Oni that it would be willing to pay the supplier by check and then accept reimbursement by wire transfer, and Oni agreed to this. (Doc. 29-6). In the second chain, Oni complained that an invoice he received had "different prices for the same items"; he told Stone that he would "refund your money" – presumably, a reference to money paid by Stone to the vendor – but said Stone need to insure "that the prices received are competitive." (Doc. 29-7).

According to Oni, an examination of the emails "reveals that the issue of these payments was one [Stone] was experiencing in its duties under the Management Contract." (Doc. 34 at 8). This is true, as far as it goes; were it not a party to the Management Contract, Stone would not have had any interest in the issue of whether subcontractors and vendors on Oni's project were getting paid. But this is a far cry from saying that the Management Contract *obligated* Stone to advance payments on Oni's behalf, so as to bar an open account claim for reimbursement of those

---

[2] Stone submitted printouts of these email chains in connection with its motion.

payments.  Stone has not argued that it was required by the Management Contract to make any such payments, and Oni has not cited any language from that agreement arguably imposing such a duty.  Nor has Oni pointed to any language from the two email chains suggesting Stone believed itself to be contractually obligated to advance payments on Oni's behalf.  To the contrary, the relevant language in the cited email chains suggests Stone's representatives were volunteering to make payments that the company, in their view, had no obligation to make.  For example, in the second email chain, a Stone representative stated

> So that Ben can continue his work and not lose any time, I am going
> to pay the attached bill if you will have your team issue a
> reimbursement.  There may be additional invoices in the future that
> we will gladly take care of under the same arrangement.

(Doc. 29-7 at 4).  Rather than simply paying the bill, Stone's representative made the payment conditional on receiving reimbursement.  This, along with the setting up of a separate "arrangement" to make such payments, suggests that Stone's representatives did not believe that the Management Contract obligated them to pay vendors and subcontractors on the job.[3]  Oni has failed to raise a genuine issue of material fact as to whether the payments at issue might have fallen under the purview of the original Management Contract or some modification of that agreement.

---

[3] Oni also points out that invoices from Stone to Oni included line items for both the monthly management fees and requests for reimbursements for payments to vendors and subcontractors.  (Doc. 34 at 8).  It is undisputed that the management fees were due under the Management Contract.  Because of this, Oni argues that including them in the same invoice as the reimbursement requests is evidence that the Management Contract was the source of both obligations – or, at least, that Stone believed this to be true.  But Oni provides no support for this argument, failing to point to anything in the Management Contract, the conduct of the parties, or elsewhere that suggests that obligations arising from different sources were expected to be billed on separate documents.

Oni's second argument involves affidavits submitted by Stone in connection with this motion. In the relevant affidavits (Doc. 29-6, 29-7), two of Stone's representatives testify that they believed (1) that Stone and Oni entered into "an unwritten agreement" for Stone to advance payment for Oni to subcontractors and for materials; (2) that Oni acknowledged this agreement; and (3) that Oni's conduct ratified this agreement. Oni interprets this testimony as evidence that the parties entered into an express agreement regarding the advancement of payment by Stone, thereby barring an open account claim for the same reasons discussed *supra*. (Doc. 34 at 9). Under Florida law, an "express contract" is one in which the parties have set forth the terms of their agreement either verbally or in writing at the time of making it, *Rabon v. Inn of Lake City, Inc.*, 693 So. 2d 1126, 1131 (Fla. 1st DCA 1997) (citations omitted), while an implied agreement is one that is inferred in whole or in part from the parties' conduct, not solely from their words, *Commerce Partnership 8098 Limited v. Equity Contract Co., Inc.,* 695 So. 2d 383, 385 (Fla. 4th DCA 1997) (citations omitted).

As described above, the affiants testified about (1) an "unwritten agreement" regarding advance payments and (2) Oni's conduct which, in their view, "acknowledged" and "ratified" this agreement. Regardless of whether their beliefs as to these points are correct, the affiants are clearly discussing an implied contract, not an express contract that would bar an open account claim. Again, Oni has failed to demonstrate that a genuine issue of material fact exists as to this point.

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Partial Summary Judgment (Doc. 29) filed by the Plaintiff, William Stone Premier Properties, LLC, is **GRANTED**. Defendant's liability to

Plaintiff under an open account theory is therefore established, with the amount of that liability to be determined at trial.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 18, 2017.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE